UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JENNIFER ANN ROACH,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.
                                        /

Case No.  1:15-CV-794

HONORABLE PAUL L. MALONEY

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Jennifer Roach seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v.*

*Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.29, 84.) She obtained a bachelor's degree, and was previously employed as a tax preparer. (PageID.53, 73, 215.) Plaintiff filed for benefits on May 13, 2014, alleging that she had been disabled since April 16, 2013, due to reflex sympathetic dystrophy (RSD), left tibial stress fracture, dysthymia with insomnia, migraine headaches, tendinitis, low back condition, fibromyalgia, myoclonus, epicondylitis, and orthostatic hypotension. (PageID.84.) Plaintiff's application was denied September 18, 2014, after which time she requested a hearing before an ALJ. (PageID.112–117.) On March 23, 2015, Plaintiff appeared with her counsel before ALJ Manh Nguyen for an administrative hearing with testimony being offered by Plaintiff and a vocational

expert (VE). (PageID.48–82.) In a written decision dated April 6, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.29–47.) On June 5, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–26.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));
2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));
3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));
4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));
5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

ALJ Nguyen determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (PageID.34.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) reflex sympathetic dystrophy (RSD); (2) status post lumbar facet arthropathy; (3) status post left tibial fracture; (4) myoclonus; (5) epicondylitis; (6) insomnia; (7) migraine headaches; and (8) major depressive disorder. (PageID.34.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.35–37.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift 10 pounds at a time. She can stand and/or walk up to two hours in an eight-hour workday and sit for up to six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds, kneel, or crawl. The claimant can occasionally climb stairs and ramps, balance, stoop, and crouch. For every 30 minutes of sitting, standing, or walking, she must be able to change position for five minutes before resuming the prior position. She will remain on-task 90% of the workday. The claimant can occasionally operate foot controls or push/pull with her lower extremities. Whenever the claimant is sitting, she must elevate her feet eight inches off the ground. She cannot tolerate exposure to extreme cold or extreme heat. She cannot perform commercial driving. She cannot work around unprotected heights or unguarded, uncovered moving machinery. The claimant can carry out simple instructions. She cannot work any job that requires production rate pace, such as assembly line work. She can occasionally interact with the general public. The claimant will miss one day of work per month.

(PageID.37.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.41.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: office helper-sorter (80,000 jobs in the nation), production inspector

(40,000 jobs in the nation), and surveillance system monitor (42,000 jobs in the nation). (PageID.78.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.42–43.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from April 16, 2013, through April 6, 2015. (PageID.43.)

## DISCUSSION

**1. The ALJ Properly Evaluated the Medical Opinions.**

Plaintiff first argues the ALJ failed to properly weigh the opinion of her primary care provider, Dr. Rudy Ochs, as well as the opinions of two consultative examiners, Dr. David Cashbaugh, and Mohammed Khaleel. (PageID.896–899.)

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.

*See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

      A.    Dr. Ochs

The record contains two Medical Source Statements (MSS), dated October 22, 2014, and March 18, 2015, respectively, that were completed by Dr. Ochs. (PageID.768–771, 870–873.) The latter MSS generally includes more restrictive limitations. Among other things, the MSS form states that Plaintiff could only sit for twenty minutes and stand for five minutes at any one time before needing to shift positions. (PageID.871.) She could sit for a total of two hours and stand or walk for about two hours in the workday. (PageID.871.) Plaintiff would need to be able to shift positions at will and take unscheduled breaks. (PageID.769, 871.) When seated, Plaintiff would need to elevate her legs to ninety degrees, or level with her hip. (PageID.770, 872.) Plaintiff could only rarely lift and carry ten pound weights and occasionally lift and carry less than ten pound weights.

6

(PageID.872.)  Plaintiff could never twist, stoop, crouch, or squat.  (PageID.872.)  Plaintiff would be off task about twenty percent of the day, and could be expected to miss about four days of work per month.  (PageID.873.)  After summarizing the doctor's opinion, the ALJ found Dr. Ochs' opinions were not supported by the treatment records, diagnostic imaging, the physical examination results of Dr. Khaleel, and Plaintiff's activities of daily living.  (PageID.41.)  The ALJ accordingly gave "little weight" to this opinion.  (PageID.41.)  Plaintiff argues the ALJ failed to give "good reasons" for doing so.

   Dr. Ochs opined that Plaintiff's limitations were due to her RSD and problems with her right leg.[2]  (PageID.871.)  The record shows that Plaintiff was diagnosed with right lower extremity RSD in 2000, after a fracture of her right foot while training for the United States Navy.  (PageID.444.)  As the ALJ pointed out, objective tests do not support the doctor's opinions.  As an initial matter, Dr. Ochs' treatment records (PageID.818–869), do not catalog any leg-elevation requirement and accordingly "call[] into question whether [plaintiff] was in fact so restricted." *Essary v. Comm'r*, 114 F. App'x 662, 667 (6th Cir. 2004).  Moreover, X-rays in November 2013 found well mineralized bones.  (PageID.655.)  Similarly, October 6, 2014, x-rays found essentially normal results with no acute disease.  (PageID.850.)  Other tests found normal right ankle dorsiflexion, normal muscle strength, and no tenderness or pain on palpation of either ankle.  (PageID.314, 464, 466.)  Similarly Dr. Khaleel found Plaintiff had only a mild right limp, and did not need an assistive device to

---

[2] RSD, also known as Complex Regional Pain Syndrome (CRPS) is "a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time." SSR 03–2p, 2003 WL 22399117, at *1 (S.S.A. Oct. 20, 2003).

ambulate. (PageID.763.) While she could not squat because of right leg pain, she had full muscle strength and no atrophy. (PageID.763.) Substantial evidence, therefore supports the ALJ's conclusion that the objective evidence was inconsistent with the doctor's extreme limitations.

All this, Plaintiff claims, is well and good, but Plaintiff argues that objective testing is not particularly useful in cases where, as here, the alleged disabling impairment largely involves chronic pain. (PageID.899.) Perhaps. But here the ALJ did not rely solely on the objective evidence in discounting the doctor's opinion. In addition to finding no support in the record for the extreme limitations, the ALJ also found the doctor's opinion to be inconsistent with the Plaintiff's activities of daily living. As the Commissioner points out, this fits squarely within SSR[3] 02–3p's direction for considering RSD cases:

> Given that a variety of symptoms can be associated with RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 03-2p, 2003 WL 22399117, at *6.

Plaintiff reported that aqua therapy helped her right foot pain "significantly." (PageID.796.) She reported being able to cook, clean, go grocery shopping, and care for her children. (PageID.251.)

---

[3] SSRs "are binding on all components of Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

She requires some help with personal care that involves bending. (PageID.251.) She is able to prepare meals for her family. (PageID.252.) She can do the laundry and dishes. (PageID.252.) She can go out and drive for twenty to thirty minutes. (PageID.253.) She regularly socializes with family and friends. (PageID.254.) The ALJ correctly found that these activities were inconsistent with Dr. Ochs' opinions. Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. Ochs' opinions. The Court does not doubt that Plaintiff's RSD and other impairments impose certain limitations. However such limitations are adequately accounted for in the RFC.

Plaintiff relatedly argues the ALJ erred in assessing the RFC. She notes the ALJ rejected Dr. Och's opinion that stated that Plaintiff had to elevate her legs to hip level. Plaintiff then notes the ALJ nonetheless provided a limitation in the RFC requiring Plaintiff be able to elevate her feet eight inches when seated. Plaintiff claims the ALJ erred because this limitation is without any support in the record. (PageID.896.)

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). It is the ALJ's responsibility, not a physician's, to determine a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). Here the ALJ found that Dr. Ochs' opinions were not supported by the record, but appears to have credited Plaintiff's statements to the Department of Veterans Affairs that she experiences pain relief when

9

elevating her legs to an unspecified height while seated. (PageID.441–42, 605.) To the extent that Plaintiff argues the ALJ erred by assigning a specific elevation to Plaintiff's statements, any such error would not warrant reversal, as it does not prejudice Plaintiff. *Cf. Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) ("Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson*, 378 F.3d at 546–47)); *see also Rushing v. Comm'r of Soc. Sec.*, No. 1:14-CV-6, 2015 WL 1478271, at *8 (W.D. Mich. Mar. 31, 2015).

For all the above reasons, Plaintiff's argument regarding Dr. Ochs is rejected.

### B. Dr. Cashbaugh and Dr. Khaleel

Plaintiff next argues that the ALJ committed reversible error when he failed to mention portions of the reports from two consultative examiners. She argues that the ALJ was required to address and analyze the fragment of Dr. Cashbaugh's report in which he offered an opinion that Plaintiff had a "[g]uarded-fair" prognosis, as well as the portion of Dr. Khaleel's report that stated "[t]he most [Plaintiff] can stand is 20 minutes, walk for 20 minutes, and sit for 30 minutes." (PageID.896–897.).

As consultative examiners, the treating physician rule did not apply to the doctors. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006). It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Comm'r of Soc. Sec.*,

397 F. App'x 195, 199 (6th Cir. 2010). In addition, as consultative examiners, the ALJ was not "under any special obligation to defer to [their] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). The ALJ was not required to discuss the "[g]uarded-fair" prognosis offered by the Dr. Cashbaugh. Such a prognosis simply reflects uncertainty regarding the individual's future condition. *See, e.g., Hernandez v. Johnson*, 248 F.3d 344, 359 (5th Cir. 2001); *Mendez v. United States*, 732 F.Supp. 414, 417 (S.D.N.Y. 1990). As Magistrate Judge Ellen Carmody of this Court put it, such a prognosis is "so vague and nebulous as to be virtually meaningless." *Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv–1308, 2013 WL 1305291, at * 10 (W.D. Mich. Mar. 28, 2013). Nor was the ALJ required to discuss the portion of Dr. Khaleel's report. It is beyond question that the ALJ considered both examiners' entire reports. (PageID.39.) That is all that is required here. The undersigned finds no basis for disturbing the Commissioner's decision.

### C. The ALJ's Hypothetical

Finally, Plaintiff objects to the ALJ's hypothetical question posed to the VE regarding sedentary jobs available to Plaintiff. (PageID.897.) Specifically, Plaintiff argues the ALJ's failure to properly consider the above medical opinions renders the hypothetical unsupported by substantial evidence. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) ("An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record.") As discussed above, the ALJ's conclusions regarding the medical opinions were properly supported by the medical evidence in the record. Consequently, the ALJ's hypothetical question to the vocational expert was appropriate, and no basis for Plaintiff's claim that

the VE's testimony was flawed exists. *See Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (holding a hypothetical question needs to only include limitations which the ALJ accepts as credible).

### 2. The ALJ Properly Considered the Rating Decision by the Department of Veterans Affairs.

Plaintiff served in the United States Navy from April 2000 through September 2000. (PageID.165.)  After suffering a fracture in her right lower extremity, the Department of Veterans Affairs issued a decision finding a seventy percent service connected disability beginning December 1, 2012, due to Plaintiff's physical and mental impairments. (PageID.165.) Plaintiff argues that the ALJ failed to properly consider this determination.

As the ALJ correctly observed, the determination by the Department of Veterans Affairs is not binding on the Social Security Administration.  As the relevant regulation provides:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504; *see also Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013).  The disability rating from the Veterans Administration "is entitled to consideration," but is not entitled to any particular weight. *Ritchie*, 540 F. App'x at 510.  The Sixth Circuit has found that when an ALJ states that he was not bound by the department's decision, but did consider it, he "clearly stated a proper understanding of the law." *Id.*; *accord Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 518–19 (6th Cir. 2013).

The ALJ considered the decision by the Department of Veterans Affairs, but found such unpersuasive and entitled to little weight. (PageID.41.)  In addition to noting he was not bound by

the department's decision, the ALJ noted that there was little objective evidence supporting the severity of Plaintiff's dysthymic disorder, and that the rating was not consistent with the Plaintiff's treatment records and activities of daily living.  (PageID.41.)  As the Court has found above, these reasons are supported by substantial evidence.  The Court accordingly finds that the ALJ adequately considered the decision by the Department of Veterans Affairs.  Plaintiff's argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**  A separate judgment shall issue.


Date:  August 5, 2016                                              /s/ Paul L. Maloney
                                                                                Paul L. Maloney
                                                                                United States District Judge